UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

SA LUXURY EXPEDITIONS, LLC,                     :
                                                :
                              Plaintiff,        :
                                                :
                 -against-                      :
                                                :
BERNARD SCHLEIEN and PERU FOR LESS              :
LLC,                                            :
                                                :
                              Defendants.       :
------------------------------------------------------------X

```
┌─────────────────────────────────────┐
│ USDC SDNY                            │
│ DOCUMENT                             │
│ ELECTRONICALLY FILED                 │
│ DOC #:_____               │
│ DATE FILED:___8/29/22___             │
└─────────────────────────────────────┘
```

22-CV-3825 (VEC)

OPINION AND ORDER

VALERIE CAPRONI, United States District Judge:

Plaintiff SA Luxury Expeditions, LLC ("SA Luxury"), which provides tours of Latin America, brings this lawsuit against Defendants Bernard Schleien ("Schleien") and Peru for Less, LLC ("Peru for Less") for breach of contract and unfair competition under New York common law and California state law. *See generally* Compl., Dkt. 1. Defendants have moved to dismiss the Complaint in its entirety. *See* Not. of Mot., Dkt. 18. For the reasons that follow, their motion is GRANTED in full, but without prejudice to Plaintiff seeking leave to amend the second and third causes of action.

## BACKGROUND

SA Luxury operates a tour business throughout Latin America, including in Peru. Compl. ¶¶ 2, 10.[1] That tour business competes with Peru for Less and other entities controlled by Schleien. *Id.* ¶ 2.[2] In September 2014, Plaintiff filed a lawsuit against Schleien and one of

---

[1]    The Court treats the facts alleged in the Complaint as true for purposes of this motion.

[2]    Defendants argue that they and Plaintiff are not competitors because, in addition to providing tours of Peru, Plaintiff provides tours of other countries and targets different customers. Defs. Mem., Dkt. 19 at 2–3; *see also* Schleien Decl., Dkt. 20 ¶¶ 2–7.

his other companies, a non-party to this action, in the U.S. District Court for the Northern District of California, alleging, *inter alia*, that he had created and published negative reviews of SA Luxury on third-party websites. *Id.* ¶¶ 2, 14–17.  To resolve that lawsuit, on September 11, 2015, SA Luxury and Schleien entered into an agreement ("Settlement Agreement") pursuant to which Schleien agreed not to make written or oral comments disparaging SA Luxury, including by posting online negative reviews of SA Luxury. *Id.* ¶¶ 2, 18–22; *see also* Schleien Decl., Settlement Agreement, Ex. 3, Dkt. 20-3 ¶ 6(a).

SA Luxury contends that, beginning in 2020 and continuing through 2021, reviews began to appear on trustpilot.com ("Trustpilot"), a review platform, giving SA Luxury four-star ratings that "were written in a clever way that attempted to cast doubt on [the] value of SA Luxury's services, but without being explicitly negative." *Id.* ¶¶ 23–26.  Because SA Luxury had, at the time, an aggregate five-star review on Trustpilot, the four-star reviews lowered its aggregate rating. *Id.*  ¶¶ 27–28.  Trustpilot eventually removed the four-star reviews at issue. *Id.* ¶ 32.

Beginning in 2022, SA Luxury began seeing what it characterizes as "fraudulent activity" related to (i) its pay-per-click ("PPC") Internet advertising and (ii) leads for clients. *Id.* ¶¶ 33, 36.  PPC advertising requires advertisers to pay a fee to a provider (typically a search engine, like Google) each time an advertisement is clicked. *Id.* ¶ 34.  According to SA Luxury, in February 2022, it experienced both a high volume of fraudulent clicks[3] and "a substantial number of fraudulent leads" resulting in higher costs; the fake leads were all submitted during Peruvian working hours and none was submitted during Peruvian holidays and Peruvian non-

---

[3]     The Complaint variously refers to "fraudulent [click] activity" and "fake click activity."  Compl. ¶¶ 33, 37, 42.  The Court understands the term "fake click" to mean a click done by an individual who is not interested in the advertisement rather than a click that is somehow not an actual click on the advertisement.  If Plaintiff chooses to amend its Complaint, it should make clear how it defines "fake click" and how it has determined that certain clicks were fraudulent and connected to Defendants.

working days.  *Id.* ¶¶ 36, 39–42.  In March 2022, Plaintiff saw a 429 percent increase in

fraudulent leads compared with October 2021.  *Id.* ¶ 46(a).  An investigation determined that at

least two of the false leads were provided by Schleien and by an employee of Peru for Less.  *Id.*

¶¶ 47–49.

On May 11, 2022, SA Luxury filed this lawsuit against Schleien and his company,

alleging breach of the Settlement Agreement and unfair competition in violation of New York

and California law.  *See generally* Compl., Dkt. 1.  Defendants have moved to dismiss the

Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  *See* Not. of Mot., Dkt. 18.

## DISCUSSION

### I.      Legal Standard

To survive a motion to dismiss for failure to state a claim upon which relief can be

granted, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to

relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell*

*Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  In general, "a complaint does not need to

contain detailed or elaborate factual allegations, but only allegations sufficient to raise an

entitlement to relief above the speculative level."  *Keiler v. Harlequin Enters. Ltd.*, 751 F.3d 64,

70 (2d Cir. 2014) (citation omitted).  When considering a Rule 12(b)(6) motion to dismiss, the

Court draws all reasonable inferences in the light most favorable to the plaintiff.  *See Gibbons v.*

*Malone*, 703 F.3d 595, 599 (2d Cir. 2013) (citation omitted).  The Court is not required,

however, to "accept as true a legal conclusion couched as a factual allegation."  *Iqbal*, 556 U.S.

at 678 (quoting *Twombly*, 550 U.S. at 555).

## II.     SA Luxury Has Not Stated a Claim for Breach of Contract

Defendants first argue that the heightened pleading standard set forth in Federal Rule of Civil Procedure 9(b) applies to Plaintiff's breach of contract claim because of its relationship to allegations of fraud.  Defs. Mem., Dkt. 19 at 6–7.  Regardless of what standard applies, however, Defendants argue that the facts alleged do not make out a breach of the Settlement Agreement. *Id.* at 7–10.

As a threshold matter, the Court agrees with Plaintiff that the breach of contract claim is not subject to a heightened pleading standard.  *See* Pl. Opp., Dkt. 21 at 8–10.  SA Luxury has clearly pled a breach of contract claim based on alleged violations of the Settlement Agreement; even if the allegations suggest fraudulent conduct, the claim nevertheless sounds in contract. *Larson v. Eney*, No. 08-CV-3513, 2009 WL 321256, at *2 (S.D.N.Y. Feb. 10, 2009) ("The only fraud alleged in the complaint stems from defendant's alleged breach of an implied contract — in other words, plaintiff alleges a fraudulent breach of contract — and it is well established that the sole remedy for a fraudulent breach of contract is an action sounding in contract, not fraud.") (cleaned up); *U.S. Bank Nat'l Ass'n v. Triaxx Asset Mgmt. LLC*, No. 18-CV-4044, 2021 WL 1227052, at *27 (S.D.N.Y. Mar. 31, 2021) ("A party advancing a breach of contract claim need not satisfy the particularity requirement of Rule 9(b).") (internal quotation marks and citation omitted).

Turning to the factual allegations in the Complaint, Plaintiff has plausibly alleged that the influx of four-star reviews lowered its overall rating on Trustpilot.  Compl. ¶¶ 27–28.  Where the claim founders, however, is on the text of the Settlement Agreement. The Settlement Agreement prohibits Schleien from making disparaging written or oral statements "describing [SA Luxury] in a manner that could reasonably be construed to portray [it] in a negative light, including by

4

describing [it] as dishonest, incompetent, corrupt, immoral, unethical, weak, unimportant, evil, or craven." Settlement Agreement ¶ 6(a).  Plaintiff acknowledges that the actual text of the reviews contains no negative portrayal of it or its services.  Pl. Opp. at 11; Compl. ¶ 25 (noting reviews did not make "explicitly disparaging comments.").  Plaintiff argues instead that the "text of the reviews is of secondary importance to [its] claim," and that the purpose or effect of the reviews was ultimately to disparage its services, because the lowered ratings portrayed SA Luxury in a worse light than had the reviews not been published.  Pl. Opp. at 11.  Unfortunately for Plaintiff, it is clear from the text of the Settlement Agreement that it reaches only statements that are, in and of themselves, disparaging.  If Plaintiff's claims are true, Schleien either constructed or lucked upon a loophole in the Settlement Agreement.  While Schleien's conduct may be devious, it does not breach the contract.

For that reason, Plaintiff's breach of contract claim is dismissed for failure to state a claim.

### III.    SA Luxury Has Not Stated a Claim for Unfair Competition under New York Common Law

Defendants next move to dismiss Plaintiff's New York common law claim for unfair competition.  Defs. Mem. at 10–14.  "[T]he essence of unfair competition under New York common law is the bad faith misappropriation of the labors and expenditures of another." *Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 34 (2d Cir. 1995) (internal citations and quotations omitted).  A claim for unfair competition under New York law must allege special damages by identifying actual losses and their causal relationship to the alleged tortious act. *Waste Distillation Tech., Inc. v. Blasland & Bouck Eng'rs, P.C.*, 136 A.D.2d 633, 634 (2d Dep't 1988).  The New York tort of unfair competition generally covers three categories of conduct: "passing off one's goods as those of another, engaging in activities solely to destroy a rival, and

using methods themselves independently illegal." *Coca-Cola N. Am. v. Crawley Juice, Inc.*, No. 09-CV-3259, 2011 WL 1882845, at *7 (E.D.N.Y. May 17, 2011) (cleaned up).[4]

Once again, at the outset, Defendants argue that Plaintiff must meet the heightened Rule 9(b) pleading standard for cases sounding in fraud. Defs. Mem. at 13 n.11. Rule 9(b) "is cast in terms of the conduct alleged, and is not limited to allegations styled or denominated as fraud or expressed in terms of the constituent elements of a fraud cause of action." *Rombach v. Chang*, 355 F.3d 164, 171 (2d Cir. 2004). The Second Circuit has not decided whether heightened pleading standards must be met to plead adequately an unfair competition claim that includes some element of fraudulent activity. *See, e.g.*, *Harris v. Am. Acct. Ass'n*, No. 20-CV-01057, 2021 WL 5505515, at *11 n.9 (N.D.N.Y. Nov. 24, 2021) (noting the issue is unsettled in this Circuit) (citation omitted). But looking to the conduct alleged, the gravamen of Plaintiff's unfair competition claim is that Defendants engaged in fraudulent activity — broadly, falsely representing themselves as potential customers. Because the cause of action sounds in fraud, the Court analyzes the Complaint under the heightened Rule 9(b) requirements.

Regardless of which pleading standard applies, Defendants argue that fraudulent clicks on advertisements cannot give rise to an unfair competition claim; that SA Luxury has not shown that Defendants committed the alleged conduct; and that SA Luxury fails to allege a sufficient injury or special damages. Defs. Mem. at 11–14.

As to the first issue, although Plaintiff describes at length the issue of fraudulent clicks in the background section of the Complaint, Plaintiff's claim for unfair competition under New

---

[4]       Plaintiff cites *Romeo & Juliette Laser Hair Removal, Inc. v. Assara I LLC*, No. 08-CV-0442, 2016 WL 815205, at *8 (S.D.N.Y. Feb. 29, 2016), for the proposition that the tort of unfair competition encompasses "any form of commercial immorality." Pl. Opp. at 12. Although the Second Circuit has noted that there is an "incalculable variety of illegal practices falling within the unfair competition rubric," a common law claim for unfair competition is still confined to the misappropriation of "the skill, expenditures and labors of a competitor" for the wrongdoer's "own commercial advantage." *Roy Exp. Co. Establishment of Vaduz, Liechtenstein v. Columbia Broad. Sys., Inc.*, 672 F.2d 1095, 1105 (2d Cir. 1982) (cleaned up).

6

York law is premised solely on fake leads.  Compl. ¶¶ 58–60; Pl. Opp. at 15–16.  Although

Defendants do not argue that generating fake leads cannot serve as a basis for an unfair

competition claim under New York common law, Defs. Mem. at 11–14, the Court nonetheless

finds that the allegations in the Complaint concerning fake leads are vague and conclusory.[5]  It is

not clear how leads are submitted or to whom they are submitted.  While the general notion is

clear, the Complaint needs to include factual allegations from which the Court can plausibly

conclude that false leads were submitted to the Plaintiff by the Defendants.

The allegations that connect Defendants to the alleged conduct are also conclusory.  SA

Luxury pleads that its investigation concluded that at least two false leads were generated by

Schleien and by an individual affiliated with Peru for Less.  *See* Compl. ¶¶ 47–49.  While it is of

no particular import whether SA Luxury pleads two or two million false leads in its Complaint, it

has to adequately establish a factual connection between the false leads and conduct by the

Defendants beyond *ipse dixit*.

Even if the Complaint's conclusory allegations that Defendants are responsible for two

false leads were adequate, the allegations regarding the false leads singled out by Plaintiff do not

satisfy Rule 9(b)'s particularity requirement.  A complaint that is governed by Rule 9(b) must

"(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker,

(3) state where and when the statements were made, and (4) explain why the statements were

fraudulent."  *Rombach*, 355 F.3d at 170 (internal quotation marks and citation omitted).  In this

instance, SA Luxury alleges that it traced two false leads to Schleien and a Peru for Less

employee.  SA Luxury has not, however, alleged the "where and when" of those false leads.

---

[5]     A competitor's submission of false leads to divert its competition's labor and expenditures away from bona
fide customers is clearly a misappropriation of the competitor's labor and expenditures.  As to whether a false lead
was submitted in bad faith, in this rare instance, the action evinces the intent.  To that end, Rule 9(b) does not
require particularity with respect to pleading state of mind, which "may be alleged generally."  Fed. R. Civ. P. 9(b).

Although SA Luxury broadly points to February 2022 as the start of the influx of false leads and notes that they were generally submitted on Monday, Tuesday, Wednesday, and Friday, *see* Compl. ¶¶ 36, 39, it does not provide the date on which either of the identifiably false leads that originated with Defendants was sent nor the content of the false communications.

Finally, SA Luxury has pleaded that it suffered at least $350,000 in damages in the handling of the false leads and the investigation of those leads.  Compl. ¶¶ 37–38, 45, 63, 65.  Although SA Luxury pleads a specific dollar amount of damage, the Court agrees with Defendants that it has not adequately alleged special damages.  An unfair competition claim must allege special damages resulting from, for example, "direct financial loss, lost dealings, or an accounting of the profits caused by the anticompetitive acts at issue."  *CA, Inc. v. Simple.com, Inc.*, 621 F. Supp. 2d 45, 54 (E.D.N.Y. 2009) (cleaned up).  Because SA Luxury has not pleaded damages falling in any of those categories, or offered greater specificity as to how it determined that Defendants' unfair competition caused it $350,000 in damages, it has not adequately alleged special damages.

Defendants' motion to dismiss Plaintiff's New York unfair competition claim is therefore granted.  But because it seems likely that SA Luxury can remedy the deficiencies in its Complaint, it may seek leave to file an Amended Complaint consistent with this opinion.[6]

---

[6]     Defendants argue Plaintiff should not be granted leave to amend.  Defs. Reply, Dkt. 23 at 17–18.  The Court notes that Defendants submitted a reply memorandum that is eighteen pages in length — almost double the Court's limitation of ten pages.  *See* Individual Rules § 4(B).  Defendants did not seek or receive permission to file an oversized reply brief.  The Court has therefore disregarded Defendants' argument against granting Plaintiff leave to amend.  Defendants are warned that if they again exceed the Court's page limits or otherwise disregard the Court's Individual Rules, the Court may strike their filing or impose other appropriate sanctions.

**IV.  SA Luxury Has Not Stated a Claim for Unfair Competition under California Law**

Finally, Defendants argue that Plaintiff's unfair competition claim under California law should be dismissed.  Defendants first argue that the Settlement Agreement precludes Plaintiff from bringing a claim under California law for unfair competition.  Defs. Mem. at 15.  The Settlement Agreement states that its choice-of-law provision governs not only interpretations of the contract but also "any dispute resulting in a legal proceeding arising out of, relating to, or to enforce any term of this Settlement Agreement."  Settlement Agreement ¶ 13.  Under New York law, which governs the Court's interpretation of the Settlement Agreement, *see id.*, "in order for a choice-of-law provision to apply to claims . . . arising incident to the contract, the express language of the provision must be 'sufficiently broad' as to encompass the entire relationship between the contracting parties."  *Krock v. Lipsay*, 97 F.3d 640, 645 (2d Cir. 1996) (citation omitted).  "[C]ourts in the Second Circuit have interpreted the broad language of similar choice-of-law-cum-forum-selection clauses to mandate application of New York law to all claims . . . arising out of a transaction."  *Nanopierce Techs., Inc. v. Southridge Cap. Mgmt. LLC*, No. 02-CV-0767, 2002 WL 31819207, at *10 (S.D.N.Y. Oct. 10, 2002) (collecting cases).[7]  Defendants argue that "arising out of" and "relating to" are broad enough terms to encompass the new actions alleged here.  Defs. Mem. at 15.  The Court disagrees.

Not only has SA Luxury not alleged a violation of the Settlement Agreement as the basis of its unfair competition claim, *see* Pl. Opp. at 18, but the activity and behavior alleged are entirely separate from the actions alleged in the prior California action.  The Settlement Agreement expressly prohibits disparaging activity, but it is silent regarding other conduct designed unfairly to harm Plaintiff, such as the submission of fraudulent clicks or leads.  Even if

---

[7]     The Court notes that neither party cited any case law in support of their opposing positions.

such claims were part of the basis for the complaint in the 2014 action, *see* Schleien Decl., 2014

Complaint, Ex. 2, Dkt. 20-2, this action is premised on newly submitted false leads that are

unconnected to the 2014 action or the settlement of it.  The claims at issue here may be part and

parcel of the same poisonous relationship that gave rise to the 2014 action, but the Court does not

find them to be "incident to the contract[.]"  *Krock*, 97 F.3d at 645 (citation omitted).[8]

As a result, the Court turns to the parties' dispute over whether Plaintiff has stated a

claim under California law.

California law prohibits "any unlawful, unfair or fraudulent business act or practice and

unfair, deceptive, untrue or misleading advertising."  Cal. Bus. and Prof. Code § 17200.  To state

a claim under that statute, the plaintiff must allege an economic injury and show that the injury

was caused by the alleged unfair business practice.  *Epic Games, Inc. v. Apple Inc.*, 559 F. Supp.

3d 898, 1051 (N.D. Cal. 2021) (citations omitted).  Courts "first consider whether lost money or

property has been sufficiently alleged[,]" and then determine causation.  *Kwikset Corp. v.

Superior Ct.*, 51 Cal. 4th 310, 325–26 (2011).

Once again, Defendants urge the Court to apply the heightened Rule 9(b) standard to this

claim.  Defs. Mem. at 15–17.  The Ninth Circuit has held that a California unfair business

practice claim is subject to the Rule 9(b) pleading standard when the claim involves fraud.

*Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124–25 (9th Cir. 2009).  Because Plaintiff clearly

alleges that Defendants "engaged in a fraudulent course of conduct[,]" *id.* at 1125, the Court

applies the heightened Rule 9(b) pleading standard to this claim.

---

[8]     The Court notes that, even if this claim were governed by the Settlement Agreement, Peru for Less was not
a party to that contract, and therefore Plaintiff's claim could still proceed against it.

Turning to the elements of a California unfair competition claim, the Complaint clearly alleges economic injury.[9]  Asserting $350,000 in damages, Plaintiff alleges that it suffered economic harm from Defendants' efforts to "forc[e] it to incur unnecessary advertising fees and then spend its resources chasing down the false leads Defendants submitted."  Pl. Opp. at 17 (citation omitted).  With respect to causation, SA Luxury alleges, albeit it in a conclusory way, that Schleien and one employee of Peru for Less submitted false leads.  *See* Compl. ¶¶ 47–48.

Defendants argue that Plaintiff has not pled the "who, what, when, where, and how of the misconduct alleged" as required under Rule 9(b).  Defs. Mem. at 17 (citing *Kearns*, 567 F.3d at 1124).  On this point, the Court agrees.  If Plaintiff has ascertained that at least two leads were submitted by Schleien and his employee at Peru for Less, *see* Compl. ¶¶ 47–48, it must plead that allegation with more specificity, including more precisely when the leads were submitted, how they were submitted, how Plaintiff knows they came from Defendants, and what they said.

In short, the Court grants Defendants' motion to dismiss Plaintiff's California unfair competition claim.  As with the New York unfair competition claim, the Court believes that the deficiencies in the pleading can likely be rectified.  Accordingly, Plaintiff may seek leave to amend its Complaint consistent with this opinion.

## CONCLUSION

For the foregoing reasons, Defendants' motion as to the breach of contract claim is granted with prejudice, and their motion to dismiss the New York and California unfair

---

[9]     Defendants argue that there are only four types of actionable economic injury, even though the case they cite for that proposition did not hold that those are the only types of injury that are actionable.  Def. Reply at 14 (quoting *Kwikset*, 51 Cal. 4th at 323).  The California Supreme Court has held that "[t]here are innumerable ways in which economic injury from unfair competition may be shown."  *Kwikset*, 51 Cal. 4th at 323.  Regardless, of the four types the California Supreme Court listed in *Kwikset*, being "required to enter into a transaction, costing money or property, that would otherwise have been unnecessary" appears to map onto Plaintiff's claim.  *Id.* (citation omitted).

competition claims is granted without prejudice to Plaintiff seeking leave to amend.  Should

Plaintiff seek leave to amend, it must do so not later than **October 3, 2022**.  Any motion for

leave to file an Amended Complaint must include a redlined and clean version of its proposed

Amended Complaint.  If Plaintiff does not seek leave to file an Amended Complaint, the case

will be dismissed.  The Clerk of Court is respectfully directed to close the open motion at Docket

18.


**SO ORDERED.**

Date:  **August 29, 2022**
          **New York, New York**

**VALERIE CAPRONI**
**United States District Judge**