USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: __05/02/2023__

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------- X

SA LUXURY EXPEDITIONS, LLC,      :
     :
                    Plaintiff,      :
     :
          -against-      :
     :
BERNARD SCHLEIEN and PERU FOR LESS      :
LLC,      :
     :
                Defendants.      :

--------------------------------------------------------------- X

22-CV-3825 (VEC)

OPINION AND ORDER

VALERIE CAPRONI, United States District Judge:

        SA Luxury Expeditions, LLC ("Plaintiff"), which provides tours of Latin America, has sued Bernard Schleien ("Schleien") and Peru for Less, LLC ("Peru for Less") (together, "Defendants") for allegedly submitting false customer leads through Plaintiff's website to drive up Plaintiff's advertising costs and exploit corporate resources in violation of unfair competition law. *See generally* Am. Compl., Dkt. 37. Defendants have moved to dismiss the Amended Complaint for failure to state a claim. *See* Not. of Mot., Dkt. 40. For the following reasons, their motion is GRANTED.

# BACKGROUND[1]

Plaintiff operates a tour business throughout Latin America, including Peru.  Am. Compl. ¶¶ 3, 10.  Defendants provide private trips to and around Peru.  *Id.* ¶¶ 5, 12.[2]  Both businesses target customers in the North American market.  *Id.* ¶¶ 13–18, 57–58.

Plaintiff markets to potential customers via pay-per-click ("PPC") Internet advertising. *Id.* ¶¶ 19, 28.  PPC advertising requires advertisers to pay a fee to a provider — a search engine like Google — each time an advertisement is clicked.  *Id.* ¶ 20.  A click may result in a "lead" if the person visiting the website contacts the affiliated business, typically by submitting a form providing contact information and expressing interest in the business's services or products.  *Id.* ¶¶ 21, 24–25, 29.  A lead prompts Plaintiff to dedicate resources to develop the lead into an actual customer.  *Id.* ¶¶ 26–30, 32.  A lead is false if, for example, the contact information is invalid or the person submitting the lead ignores all contact efforts from Plaintiff.  *Id.* ¶ 31. Plaintiff receives copies of all leads submitted through its website.  *Id.* ¶ 30.

In October 2021, about 20 percent of the leads Plaintiff received were false.  *Id.* ¶¶ 51(a)– (b).  Plaintiff received a "substantial number" of false leads, however, from January 2022 to around July 2022.[3]  *Id.* ¶¶ 33, 44–45.  During those months, more than 50 percent of the leads

---

[1]    For purposes of this opinion, the Court assumes the truth of the facts alleged in the Amended Complaint. Defendants repeatedly dispute Plaintiff's version of events in their memorandum in support of this motion.  *See* Defs. Mem., Dkt. 42, at 2–3, 10.  Such factual quibbles are generally inappropriate at the motion-to-dismiss stage; the Court therefore disregards them.  *See TMT Co. Ltd. v. JPMorgan Chase Bank*, 16-CV-8757 (VM), 2018 WL 1779378, at *4 (S.D.N.Y. Mar. 28, 2018).

[2]    Peru for Less has a principal place of business in Texas; its members are based in Peru.  Schleien is also based in Peru.  Am. Compl., Dkt. 37, ¶¶ 4–5.

[3]    Defendants assert that Plaintiff's allegations are "implausible" because the original Complaint alleged that fraudulent activity began in "late February 2022" whereas the Amended Complaint alleges that fraudulent activity began "in or about January 2022."  Defs. Mem. at 11.  Courts routinely assume the truth of the allegations in an amended complaint at the motion-to-dismiss stage even if they are somewhat inconsistent with allegations in the original complaint.  *See Bernadotte v. N.Y. Hosp. Med. Ctr. of Queens*, No. 13-CV-965 (MKB), 2014 WL 808013, at *5–6 (E.D.N.Y. Feb. 28, 2014) (collecting cases).

Plaintiff received were false.  *Id.* ¶ 86.  In March 2022, Plaintiff received 429 percent more false

leads than in October 2021.  *Id.* ¶¶ 51(a)–(b).

Plaintiff retained a digital forensic examiner and a licensed private investigator in March

2022 to analyze the "sudden and dramatic" rise in false leads.  *Id.* ¶ 49.  Plaintiff's investigation

revealed that one false lead it received in 2021 (the "Smith Lead") and one false lead it received

in 2022 (the "Debedout Lead") had been submitted by Defendants.  *Id.* ¶¶ 52–53.[4]  On December

24, 2021, an individual identified as Gabriella Smith requested an itinerary for a seven-day trip

to Peru.  *Id.* ¶ 36.  After several unsuccessful attempts to contact the potential customer, Plaintiff

learned through a person working for Defendants that Defendants' marketing team had submitted

the Smith Lead, and later determined that an employee named Gabriella Smith is a member of

the Peru for Less marketing team.[5]  *Id.* ¶¶ 37–42.  On March 10, 2022, an individual identified as

Patricia Debedout expressed interest in sightseeing around Peru.  *Id.* ¶ 53.  Plaintiff's digital

forensic examiner concluded that the IP address used to submit the Debedout Lead traced back to

Schleien.  *Id.* ¶¶ 53–55.

Upon Plaintiff's "information and belief," Defendants are the "source" of every false lead

it received in 2022.[6]  *Id.* ¶¶ 35, 70.  In support of this assertion, Plaintiff alleges that the Smith

Lead was the "first trickle of the flood" of false leads submitted by Defendants and that Schleien

---

[4]     Plaintiff's investigator concluded that "at least some" of the fraudulent leads it received were from Defendants.  Am. Compl. ¶ 52.

[5]     Plaintiff alleges that the Smith Lead was submitted through an "anonymizing server" that made it "impossible to track the IP address," *id.* ¶ 50, but later contradicts itself by asserting that the Smith Lead was "submitted with traceable IP addresses that are based in Peru," *id.* ¶ 68.

[6]     Plaintiff's allegations on this point are inconsistent.  Although the Amended Complaint states in one instance that Defendants are responsible for *all* of the false leads Plaintiff received in 2022, *see id.* ¶ 35, it elsewhere dials back, asserting instead that Defendants are the source of "at least some of the fraudulent leads," *id.* ¶ 52, or "most, if not all" of the increase in false leads in 2022, *id.* ¶ 56.  Plaintiff does not specify how many false leads it received in 2021 or 2022.

personally submitted[7] the Debedout Lead.  *Id.* ¶¶ 44, 56.  Because the Smith Lead was submitted

as part of an "organized effort" by the Peru for Less marketing team, Plaintiff asserts that it is

"reasonable to conclude" that the marketing team submitted even more false leads.  *Id.* ¶ 56.  The

false leads were all submitted during Peruvian working hours; none was submitted during

Peruvian holidays — Easter weekend and Peruvian Labor Day — or during Peruvian non-

working hours or days.[8]  *Id.* ¶¶ 45–47.  Plaintiff also asserts that the number of false leads it

received decreased "significant[ly]" after this case was filed; the number "significantly

increased" within days of Plaintiff filing a motion for leave to amend.  *Id.* ¶¶ 92–93.

Plaintiff claims that it has been harmed by a "flood" of false leads in 2022 by paying

more than it should have for advertising and by expending labor on false leads that could have

been spent on actual potential customers.  *Id.* ¶¶ 72–73,75–85, 87–91.  Plaintiff also claims that

Defendants profited from their unlawful conduct by obtaining customers who would have used

Plaintiff's services had it not been responding to false leads.  *Id.* ¶ 74.

Plaintiff initially alleged breach of contract and unfair competition under New York and

California law.  *See generally* Compl., Dkt. 1.  This Court dismissed the breach-of-contract claim

with prejudice and the unfair competition claims without prejudice.  Order & Opinion, Dkt. 24,

at 10–11.  On November 30, 2022, with leave from the Court, Plaintiff filed an Amended

Complaint.  *See generally* Am. Compl.  Defendants move to dismiss the Amended Complaint for

failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  *See* Not. of Mot.

---

[7]    Plaintiff also asserts that Schleien previously settled a lawsuit Plaintiff brought against him for false
advertising, fraud, and interference with business expectancy, among other claims.  *Id.* ¶¶ 60–65.

[8]    Plaintiff does not target its services at the Peruvian market.  *Id.* ¶ 67.  Schleien and "some" of the staff at
Peru for Less reside in Peru.  *Id.* ¶ 69.

**DISCUSSION**

To survive a motion to dismiss for failure to state a claim upon which relief can be granted, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In general, "a complaint does not need to contain detailed or elaborate factual allegations, but only allegations sufficient to raise an entitlement to relief above the speculative level." *Keiler v. Harlequin Enters. Ltd.*, 751 F.3d 64, 70 (2d Cir. 2014) (citation omitted). When considering a Rule 12(b)(6) motion to dismiss, the Court draws all reasonable inferences in the light most favorable to the plaintiff. *See Gibbons v. Malone*, 703 F.3d 595, 599 (2d Cir. 2013) (citation omitted). The Court is not required, however, to "accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

A complaint sounding in fraud must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004) (internal quotation marks and citations omitted). Pleadings of fraud, which are governed by Fed. R. Civ. P. 9(b), "cannot be based upon information and belief," except as to "facts peculiarly within the opposing party's knowledge." *Divittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987). Allegations based on "information and belief are insufficient unless they include a statement of facts on which the belief is founded." *Ctr. Cadillac, Inc. v. Bank Leumi Tr. Co. of N.Y.*, 808 F. Supp. 213, 229 (S.D.N.Y. 1992) (collecting cases).

Although Plaintiff sufficiently alleged that Defendants submitted two false leads, it has

not alleged adequately that Defendants submitted the large volume of false leads that resulted in

Plaintiff's damages.  The Court therefore grants Defendants' motion to dismiss.

I.      **Plaintiff Has Not Stated a Claim for Unfair Competition Under New York Law**

"[T]he essence of unfair competition under New York common law is the bad faith

misappropriation of the labors and expenditures of another."  *Jeffrey Milstein, Inc. v. Greger,*

*Lawlor, Roth, Inc.*, 58 F.3d 27, 34 (2d Cir. 1995) (internal citations and quotations omitted); *see*

*also ITC Ltd. v. Punchgini, Inc.*, 9 N.Y.3d 467, 478 (2007) ("An unfair competition claim

involving misappropriation usually concerns the taking and using of the plaintiff's property to

compete against the plaintiff's own use of the same property") (quotations omitted)).  A claim

for unfair competition under New York law must allege special damages by identifying actual

losses and their causal relationship to the alleged tortious act.  *Waste Distillation Tech., Inc. v.*

*Blasland & Bouck Eng'rs, P.C.*, 136 A.D.2d 633, 634 (2d Dep't 1988).

Defendants assert that Plaintiff once again failed to allege a factual connection between

the false leads it received in 2022 and Defendants' conduct, beyond *ipse dixit*.  *See* Defs. Mem.,

Dkt. 42, at 8–10.[9]  The Court agrees.  Although Plaintiff has now sufficiently alleged that

Defendants submitted two false leads,[10] its allegations that Defendants are responsible for the

dramatic increase in false leads that it received in 2022 causing it damage are conclusory.

---

[9]      Defendants also argue that claims against Schleien should be dismissed because he does not compete against Plaintiff.  Defs. Mem. at 5–6.  Because the Court dismisses the Amended Complaint on other grounds, it does not address this argument.

[10]     The Court previously concluded that Plaintiff did not sufficiently plead the Smith Lead and the Debedout Lead.  Order & Opinion, Dkt. 24, at 7–8.  The Amended Complaint addresses the Court's concerns by alleging the what, who, when, and why of the two leads in compliance with Fed. R. Civ. P. 9(b).  *See* Am. Compl. ¶¶ 36, 39–42, 53–55.  As discussed *infra*, however, the Amended Complaint fails to state a claim in other respects.

Because about 20 percent of Plaintiff's leads were false before Defendants allegedly began their scheme, Plaintiff's damages only arise from the dramatically increased number of false leads it received in 2022.  Without allegations reasonably connecting Defendants to this alleged onslaught, the Amended Complaint fails to state a claim.  *See Waste Distillation Tech*., 136 A.D. 2d at 634 (dismissing the plaintiff's unfair competition claim because it failed to allege that losses were "causally related" to the defendant's conduct); *cf. Born v. Quad/Graphics, Inc.*, 521 F. Supp. 3d 469, 494–95 & n. 22 (S.D.N.Y. 2021) (dismissing the plaintiff's fraud claims because, *inter alia*, the Court could not "divine a theory of loss causation with respect to the false statements").  Plaintiff need not necessarily identify more than two false leads, but it must state facts tending to show that Defendants, as opposed to any of the other entities or individuals who have historically submitted false leads to Plaintiff, were responsible for the purported onslaught of false leads that gave rise to this lawsuit.  Plaintiff failed to do so.

The Court cannot reasonably infer that Defendants orchestrated a scheme to flood Plaintiff with false leads merely because the Peru for Less marketing team submitted the Smith Lead shortly before the flood began.  *See Thayil v. Fox Corp.*, No. 11-CV-4791 (SAS), 2012 WL 364034, at *4 (S.D.N.Y. Feb. 2, 2012) (granting a motion to dismiss because the complaint was "filled with conclusory allegations of wrongdoing . . . unsupported by factual assertions that would allow [the] [c]ourt to draw a reasonable inference that defendants [were] liable for the alleged misconduct").  Nor does the allegation that Schleien submitted the Debedout Lead and previously settled a separate matter with Plaintiff lead to the reasonable conclusion that he was responsible for the dramatic increase in the number of false leads submitted in 2022.  *See Citibank, N.A. v. K-H Corp.*, 968 F.2d 1489, 1497 (2d Cir. 1992) (affirming the dismissal of plaintiffs' fraud claim because plaintiffs failed to allege how the misstatement caused the alleged

7

loss); *Quinby & Co. v. Funston*, 177 N.Y.S.2d 736, 739 (Sup. Ct. 1958) (dismissing the plaintiff's unfair competition claim because it failed to allege that defendants' actions, even if "not completely truthful," caused the plaintiff's losses).

Although factual allegations that constitute circumstantial evidence of wrongdoing can be sufficient to meet the Rule 9(b) pleading standard,[11] Plaintiff's allegations do not meet the mark. Plaintiff concludes that the false leads "appear[] to be from Peru," where some of Defendants' employees reside, because the false leads were submitted during Peruvian business hours and not during Peruvian holidays.  Am. Compl. ¶ 45–48, 66, 68–69.  But Peru is in the Central Standard Time Zone, which includes at least eight other countries, and the Peruvian holidays Plaintiff cites — Easter and Peruvian Labor Day — were both on weekends.  Plaintiff also offers a panoply of statistics — a 429 percent increase in false leads in March 2022 compared to October 2021, 81 percent of leads being false in March 2022, and more than 50 percent of leads being false between January and July 2022 — but the Court still cannot discern, or even approximate, how many false leads Plaintiff received during the relevant time period, let alone how many of those false leads originated with Defendants.  *Id*. ¶¶ 51(a)–(b), 86.[12]  Plaintiff asserts that Defendants are incentivized to harm Plaintiff because they are competitors, Pl. Mem., Dkt. 44, at 14, but if that were enough to tip the scale from conclusory to plausible, then any business could sue its competitor with speculative, conclusory allegations of fraud.

---

[11]     *See, e.g., Altimeo Asset Mgmt. v. Qihoo 360 Tech. Co. Ltd.*, 19 F.4th 145, 150–51 (2d Cir. 2021) (explaining that a plaintiff may satisfy the Rule 9(b) pleading standard with factual allegations of circumstantial evidence if the evidence helps explain "how and why the statement was misleading when made"); *Watson v. Riptide Worldwide, Inc.*, No. 11-CV-0874 (PAC), 2012 WL 383946, at *8 (S.D.N.Y. Feb. 7, 2012) (explaining that a plaintiff may allege actual intent through circumstantial evidence because it is "difficult[]" to prove).

[12]     Plaintiff points to fluctuations in the number of false leads it received during this litigation as evidence of Defendants' culpability, but the two trends it identified — a significant reduction after this case was filed and a significant rise after Plaintiff moved for leave to amend — could be mere coincidence.

Nor can Plaintiff chalk up its failure to meet its pleading burden to Defendants' control over relevant facts.  Plaintiff references its own records of false leads and purportedly hired a forensic examiner to analyze their composition and origin.  *See* Am. Compl. ¶¶ 30, 49.  Yet Plaintiff only provides facts about two false leads[13] and statistics that do not plausibly allow the Court to infer that Defendants are connected to the alleged tortious conduct at issue.  *See Rubio v. BSDB Mgmt. Inc.*, 19-CV-11880 (VSB), 2021 WL 102651, at *5 (S.D.N.Y. Jan. 12, 2021) (denying the defendant's motion to amend its counterclaim because it failed to allege direct or circumstantial evidence of relevant documents presumably in its possession); *Karasyk v. Marc Commodities Corp.*, 770 F. Supp. 824, 830 (S.D.N.Y. 1991) ("Allegations may be based on information and belief when facts are peculiarly within the opposing party's knowledge . . . but [this] does not constitute a license to base claims of fraud on speculation or conclusory allegations.").

---

[13]     Plaintiff argues that providing particulars regarding the two false leads is sufficient to survive a motion to dismiss because it is not required to allege the date and time of every false communication it received from Defendants "[w]here the misstatements are alleged to have occurred over a period of time."  Pl. Mem., Dkt. 44, at 17 (quoting *Lehman Bros. Comm. Corp. v. Minmetals Int'l Non-Ferrous Metal Trad. Co.*, No. 94-CV-8301 (JFK), 1995 WL 608323, at *2 (S.D.N.Y. Oct. 16, 1995)).  But just because Plaintiff need not state the precise "date and time" of every fraudulent statement Defendants made does not relieve Plaintiff of the obligation to allege facts tending to show that Defendants are responsible for the unusually large volume of false leads that caused the alleged harm.  *Lehman Brothers* illustrates how the Amended Complaint falls short.  In that case, the counterclaiming defendant sufficiently alleged that statements by Lehman Brothers employees enticed the defendant's former employee to engage in unsuitable transactions in part because it identified "the specific circumstances and content of the material misrepresentations or omissions" that allegedly led its former employee astray.  *Id.* at *3.  The mere fact that the defendant failed to identify "the specific individuals responsible for each and every misrepresentation or omission alleged" was not fatal to its counterclaim.  *Id.*  By contrast, in this case, Plaintiff has not only failed to identify "each and every misrepresentation" Defendants made, but has also failed to allege facts tending to show that Defendants engaged in a scheme to flood Plaintiff's website with false leads.  Plaintiff's reliance on *Champion Motor Grp., Inc. v. Visone Corvette of Mass., Inc.*, 992 F. Supp. 203, 208–09 (E.D.N.Y. 1998), is similarly misplaced; in that case, the plaintiff, despite not specifying the exact date and place of each alleged misrepresentation, sufficiently alleged the scope and contents of the misrepresentations.  *Id.* at 208.

Plaintiff also asserts that it expects to uncover additional leads submitted by Defendants through discovery.  Am. Compl. ¶ 56.  But Plaintiff has not alleged "enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal conduct" for the reasons discussed *supra*.  *Lynch v. City of New York*, 952 F.3d 67, 75 (S.D.N.Y. 2020) (quotations omitted); *see Thayil v. Fox Corp.*, No. 11-CV-4791 (SAS), 2012 WL 364034, at *4 (S.D.N.Y. Feb. 2, 2012) (dismissing the plaintiff's argument that he would reveal factual allegations supporting his conclusory assertions through discovery).

For all of those reasons, Plaintiff fails to state a claim for unfair competition under New York law.

## II.     Plaintiff Has Not Stated a Claim for Unfair Competition Under California Law

California law prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."  Cal. Bus. and Prof. Code § 17200.  To state a claim under that statute, a plaintiff must allege an economic injury and show that the injury was caused by the alleged unfair business practice.  *CF Gainsville In'vr, LLC v. Astronergy Solar, Inc.*, 615 F. Supp. 3d 1137, 1145 (C.D. Cal. 2022).  Courts "first consider whether lost money or property has been sufficiently alleged" and then determine causation.  *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 325–26 (2011).  Because Plaintiff relies on a "fraudulent business act" as the basis for its claim, the Rule 9(b) heightened pleading standard applies.  *So v. HP, Inc.*, No. 22-CV-02327 (BLF), 2022 WL 16925965, at *2 (N.D. Cal. Nov. 14, 2022).

The Amended Complaint fails to state a claim under California law for the same reason it falters under New York law: a lack of connection between the harm Plaintiff suffered and Defendants' conduct.  Plaintiff failed sufficiently to allege that Defendants were responsible for the "substantial number" of false leads it received in 2022.  The Smith Lead and the Debedout Lead, although sufficiently pled, are not enough to infer that Defendants are responsible for the onslaught of false leads that harmed Plaintiff.  *See Martinez v. Ford Motor Co.*, No. 22-CV-1082 (MMA), 2022 WL 14118926, at *7 (S.D. Cal. 2022) (dismissing the complaint because the plaintiff did not sufficiently plead the defendants' alleged wrongdoing).

Plaintiff's patchwork of circumstantial evidence does not remedy its failure to connect Defendants to the high volume of false leads that caused its damages.  *See Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993) (explaining that even when plaintiffs "can not be expected to

have personal knowledge of the relevant facts . . . a plaintiff who makes allegations on

information and belief must state the factual basis for the belief"); *Temple v. Bank of Am., N.A.*,

15-CV-01330 (NMC), 2015 WL 3658834, at *5–6 (N.D. Cal. June 12, 2015) (dismissing a

plaintiff's fraud claim under California Unfair Competition Law for failure sufficiently to allege

that the defendants committed the alleged tortious act).  Plaintiff's lack of compelling

circumstantial evidence is especially glaring given that it has control over relevant facts through

its receipt of the false leads and its forensic investigation.  *See Grant v. Aurora Loan Servs., Inc.*,

736 F. Supp. 2d 1257, 1274 (C.D. Cal. 2010) (holding that to the extent a plaintiff has the

relevant information, it must plead facts with specificity under Rule 9(b)).

## CONCLUSION

For the foregoing reason, Defendants' motion to dismiss is GRANTED, and the

Amended Complaint is DISMISSED with prejudice.[14]

The Clerk of Court is respectfully directed to close the open motion at Dock Entry 40 and

to close the case.

**Date:  May 2, 2023**                                                             **VALERIE CAPRONI**
**New York, New York**                                                  **United States District Judge**

---

[14]        *See Rosner v. Bank of China*, No. 06-CV-13562 (VM), 2008 WL 5416380, at *14 (S.D.N.Y. Dec. 18, 2008) (dismissing the plaintiff's fraud claim with prejudice after the plaintiff "failed to cure the deficiencies" identified in the Court's order dismissing the original complaint).